UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JAMES H. MONTICELLI, as Administrator of
the Estate of JAMES W. MONTICELLI,

                       Plaintiff,

        v.                                  5:12-cv-1274

WAL-MART STORES EAST, LP, IQ
PRODUCTS COMPANY,

                       Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

Plaintiff James H. Monticelli, as administrator of the estate of James W. Monticelli, commenced the instant action seeking to recover damages for injuries to, and the resulting death of, James W. Monticelli arising out of his inhalation of a product made by Defendant IQ Products Company and sold by Defendant Wal-Mart Stores East, LP.

**I.    FACTS**

The Amended Complaint alleges the following facts which, for purposes of the pending motion to dismiss, are assumed to be true.

On numerous occasions prior to September 28, 2010, James W. Monticelli purchased large quantities of canned dust remover with the brand name "CleanSafe" from Defendant Wal-Mart Stores, Inc. ("Wal-Mart"). CleanSafe is manufactured by Defendant IQ Products Company ("IQ"). Monticelli was seriously injured on September 28, 2010, resulting

in his death.[1]  The administrator of the estate of Monticelli commenced the instant action seeking compensation for Monticelli's pain and suffering and wrongful death. Briefly stated, it is claimed that Wal-Mart negligently sold large quantities of CleanSafe.  It is further claimed that IQ knew that CleanSfae was commonly abused by individuals as an inhalant capable of producing psychoactive effects but failed to add sufficient quantities of deterrent or bittergent to deter inhalant abuse.  Presently before the Court is Defendant IQ's motion to dismiss pursuant to Fed. R. Civ. P. 12 seeking dismissal of the claims against it.

## II.    STANDARD OF REVIEW

In deciding a motion under Rule 12(b)(6),

> [the court] will accept all factual allegations in the [C]omplaint as true and draw all reasonable inferences in [Plaintiff's] favor." Johnson v. Rowley, 569 F.3d 40, 43 (2d Cir. 2009) (quotation marks and citation omitted).
>
> In Ashcroft v. Iqbal, the Supreme Court set forth a "two-pronged approach" to evaluate the sufficiency of a complaint. 129 S.Ct. at 1949-50.  "First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quotation marks and alterations omitted). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss, and determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. (quotation marks and alteration omitted).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S. Ct. at 1949 (quotation marks omitted).  Plausibility thus depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable.  See id. at 1947-52.

L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 429-30 (2d Cir. 2011).

---

[1] Although the Amended Complaint does not explicitly state how Monticelli was injured in connection with the use of CleanSafe, it can reasonably be inferred from his claims and allegations that he intentionally inhaled it for its psychoactive effects.

**III.     DISCUSSION**

Defendant IQ moves to dismiss on the grounds that: (i) because the decedent was engaging in an illegal act (possessing and using cocaine) that contributed to his injuries and resulting death, he is precluded as a matter of law from recovering in tort; and (ii) the cocaine use was a superceding cause of injury.

Where "a plaintiff has engaged in unlawful conduct, the courts will not entertain suit if the plaintiff's conduct constitutes a *serious* violation of the law and the injuries for which the plaintiff seeks recovery are the *direct* result of that violation." Manning v. Brown, 91 N.Y.2d 116, 120 (1997); see also Barker v. Kallash, 63 N.Y.2d 19. "The policy derives from the rule that one may not profit from one's wrongdoing." Manning, 91 N.Y.2d at 120. Recovery is denied because New York State policy "generally denies judicial relief to those injured in the course of committing a serious criminal act." Id. Dismissal is not warranted "merely because the plaintiff's injuries were occasioned by a criminal act." Id. "Preclusion is required only where the plaintiff's injuries 'were a direct result of a serious violation of the law involving hazardous activities which were not justified under the circumstances.'" Id. (quoting Barker, 63 N.Y.2d at 19).

Cocaine use constitutes a serious violation of the law. See People v. Varela, 121 Misc.2d 1051, 1056 (Sup. Ct. New York County) (selling cocaine is a serious offense); Matter of Kaufman, 136 A.D.2d 192, 194 (1st Dep't 1988) (possession of cocaine is a serious offense constituting professional misconduct); People v. DiOrio, 99 A.D.2d 593, 594 (3d Dep't 1984) ("cocaine use has a serious adverse effect on our society"). If Monticelli was injured inhaling or otherwise using CleanSafe along with his cocaine use, then there would be a direct connection between the violation and Plaintiff's injuries and the rule announced in Manning

and Barker would be applicable. Even assuming the Court could consider the death certificate and/or coroner's report[2] on IQ's motion to dismiss, assuming the facts alleged in the Complaint as true and drawing all reasonable inferences in Plaintiff's favor, it cannot be said at this time that Monticelli was using cocaine at the time he inhaled the CleanSafe and, therefore, that Monticelli was injured as a direct result of engaging in a serious violation of the law.[3]  For this same reason, even though Monticelli may have been found to have had

---

[2] The death certificate lists the immediate cause of death as "MIXED COCAINE AND 1,1-DIFLUOROETHANE INTOXICATION."

[3] The materials submitted to the Court strongly support the conclusion that Monticelli did inhale CleanSafe along with his cocaine use. The evidence concerning the circumstances surrounding Monticelli's death (including whether he was using cocaine in connection with CleanSafe) should be within Plaintiff's possession and/or knowledge. The Court presumes that Plaintiff will not pursue factual contentions that are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery, Fed. R. Civ. P. 11(b)(3), or legal contentions that are not warranted by existing law or a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law. Fed. R. Civ. P. 11(b)(2). At the appropriate time, Defendants may file a motion for summary judgment on this issue

(continued...)

cocaine in his system, the Court cannot conclude at this time that any cocaine use was a superceding cause of death.

## IV.     CONCLUSION

Although it appears likely that Monticelli sustained serious injuries resulting in death as a result of his using cocaine along with CleanSafe, thereby precluding his claims as a matter of law, the Court cannot make that determination on the instant motion to dismiss. Looking at the Amended Complaint in the light most favorable to Plaintiff, it is possible that Monticelli was not using cocaine in connection with inhaling CleanSafe and, thus, was not engaging in a serious violation of the law and did not engage in conduct that superceded the cause of death.  Accordingly, Defendant IQ's motion to dismiss is DENIED.

IT IS SO ORDERED.

Dated: September 20, 2012

_____
Thomas J. McAvoy
Senior, U.S. District Judge

---

[3](...continued)